The CLARK CONSTRUCTION GROUP, INC., Plaintiff,

v.

EAGLE AMALGAMATED SERVICE, INC.; Capitol Indemnity Corporation; Investors Insurance Company of America; First Specialty Insurance; Lexington Insurance Company; and RLI Insurance Company, Defendants.

Eagle Amalgamated Services, Inc., Third–Party Complainant,

v.

Engineered Demolition, Inc., Third–Party Defendant.

Lexington Insurance Company, Third–Party Plaintiff,

v.

ICI Americas, Inc. and City of Memphis, Third–Party Defendants.

No. 01–2478 DB.

United States District Court, W.D. Tennessee, Western Division.

March 25, 2002.

Lucian T. Pera, Esq., Armstrong Allen, PLLC, Memphis, TN, Michael Evan Jaffe, Esq., Timothy F. Brown, David T. Dekker, Arent Fox Kintner Plotkin & Kahn, Washington, DC, for the Clark Construction Group, Inc., plaintiffs.

William L. Bomar, Esq., Glankler Brown, PLLC, Memphis, TN, Randall P. Mueller, Esq., Carey Omalley Whitaker & Manson PA, Tampa, FL, Albert C. Harvey, Esq., Timothy R. Johnson, Jeffrey Switzer, Thomason Hendrix Harvey Johnson & Mitchell, Memphis, TN, Barry L. Howard, Esq., Gracey Ruth Howard Tate & Sowell, Nashville, TN, Warren D. McWhirter, Esq., Glassman Jeter Edwards & Wade, P.C., George T. Lewis, III, Esq., Baker Donelson Bearman & Caldwell, Memphis, TN, W. Bruce Baird, Esq.,

Steven M. Crawford, Esq., Frost Brown Todd LLC, Louisville, KY, for Eagle Amalgamated Services, Inc., Capitol Indemnity Corporation, Investors Insurance Company of America, First Specialty Insurance Corporation, Lexington Insurance Company, RLI Insurance Company, Engineered Demolition, Inc., ICI Explosives USA, Inc., defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DONALD, District Judge.

Plaintiff, the Clark Construction Group, Inc. ("Plaintiff"), filed a complaint against Eagle Amalgamated Services, Inc. ("Eagle") and Capitol Indemnity Corporation ("Capitol") and moved for partial summary judgment as to the liability of Capitol and Eagle. Capitol and Eagle submitted a joint response to Plaintiff's motion for partial summary judgment.

For the reasons stated herein, the Court **GRANTS** Plaintiff's motion for partial summary judgment on the issue of liability.

## I. Factual Background

Plaintiff alleges that, in February of 1999, Plaintiff entered into a written contract with the City of Memphis and the Memphis Cook Convention Commission (collectively "the Owners") for the renovation, expansion, and construction (the "Project") of the Memphis Cook Convention Center in Memphis, Tennessee. The Project included demolition of the Concourse Hall, a structure attached to the existing Convention Center.

On or about February 16, 1999, Plaintiff and Eagle entered into a written subcontract (the "Subcontract"). Under the terms of the Subcontract, Eagle agreed to undertake demolition of the Concourse Hall, as well as other selective demolition and asbestos abatement work at the Pro-

ject site. Eagle also assumed "the entire responsibility and liability for all work, supervision, labor and materials provided [under the Subcontract].... and other things provided by [Eagle] until final acceptance of the work by the [City of Memphis and the Memphis Convention Center Commission]." (Plaintiff's Mem. in Support of Plaintiff's Mot. for Partial Summ. J. Against Defendants Eagle Amalgamated Services, Inc. and Capitol Indemnity Corp., at Att. F, ¶ 6(a)). Eagle further agreed to defend, indemnify, and hold harmless Plaintiff from and against all "claims, expenses, damages, and losses arising out of its work." *Id.* at Att. C, ¶ 45.

On or about March 4, 1999, Capitol Indemnity Corporation ("Capitol") issued Clark a performance bond (the "Performance Bond") as required by the Subcontract. The Performance Bond obligated Capitol, as a surety, to assure Eagle's full and complete performance of the Subcontract. It also required Capitol to hold Plaintiff harmless for any loss, damage, or expense that Plaintiff might incur if Eagle failed to satisfy its contractual obligations.

Eagle retained Engineered Demolition, Inc. ("Engineered Demolition") to assist with demolition of the Concourse Hall. With its agents and subcontractors, Eagle performed all of the preparatory work associated with the implosion of the Concourse Hall.

On October 10, 1999, Eagle and Engineered Demolition performed the scheduled implosion of the Concourse Hall. This action unexpectedly damaged the adjacent Convention Center. Engineered Demolition employees subsequently left the Project site without participating in the complex clean-up efforts necessitated by the unexpected results of their demolition work. Several months later, Eagle also

abandoned the Project prior to fulfilling the terms of the subcontract.

On October 11, 1999, the Owners informed Plaintiff that it would hold Plaintiff responsible for all costs associated with repairing the damage resulting from the October 10th implosion. Plaintiff claims to have spent over a million dollars addressing damages caused by the demolition work it subcontracted to Eagle.

On October 12, 1999, Plaintiff alleges that it notified Eagle of the Owners' claims and demanded that Eagle defend, indemnify, and hold Plaintiff harmless from and against all claims, damages, and losses arising from the accident. Eagle rejected Plaintiff's October 12th demand.

On October 18, 1999, Plaintiff notified Capitol of the Owners' claims and demanded that Capitol fulfill its responsibilities under the performance bond. Capitol rejected Plaintiff's October 18th demand.

On June 20, 2001, Plaintiff filed the instant complaint alleging claims against Eagle and Capitol. Eagle asserted counterclaims against Engineered Demolition alleging that the subcontractor negligently performed the implosion work.

On November 15, 2001, Plaintiff filed a motion for partial summary judgment on the issue of liability. Although the Amended Complaint against Eagle includes claims for breach of contract, negligence, and contractual and common law indemnity, Plaintiff moves for summary judgment against Eagle solely on the question of Eagle's liability for the contractual indemnity claim. As to Capitol, Plaintiff seeks summary judgment only with respect to liability for breach of the Performance Bond. Eagle and Capitol filed a joint response to Plaintiff's motion for partial summary judgment on January 25, 2002. Plaintiff submitted a reply memorandum on February 7, 2002. Neither Eagle nor Capitol disputes the relevant, material allegations asserted by Plaintiff.

Accordingly, the Court accepts the following facts as true for purposes of this motion.

## II. Legal Standards

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. This in turn may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727, at 35 (2d ed. Supp.1996).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Walborn v. Erie County Care Facility*, 150 F.3d 584, 588 (6th Cir.1998). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. *Kalamazoo River Study Group*

*v. Rockwell Intern. Corp.,* 171 F.3d 1065, 1068 (6th Cir.199).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

## III. Analysis

Plaintiff moves for partial summary judgment against Eagle solely on the question of Eagle's liability for the contractual indemnity claim. As to Capitol, Plaintiff seeks summary judgment only with respect to liability for breach of the performance bond. Plaintiff seeks to reserve the issue of damages as to these two defendants. Capitol and Eagle contend that Plaintiff's motion is premature because: (1) Plaintiff has not itemized the relevant damages; (2) discovery has not yet been completed; and (3) other third-party defendants may be added. Capitol and Eagle further assert that granting Plaintiff's motion will not narrow the scope of the Court's inquiry because "[a]ll [Plaintiff's] motion basically seeks to do is to have this Court rule that the contracts are what they are and say what they say." (Reply of Eagle Amalgamated Services, Inc. and Capitol Indemnity Corporation to Clark's Mot. for Part. Summ. J., at 3).

## A. Eagle's Liability for Contractual Indemnity

Paragraph 6(c) of the Subcontract provides in relevant part:

If any... property is damaged, lost or destroyed, as a result, in while or in part, of Subcontractor's acts or omissions, whether or not involving the negligence of Subcontractor, his employees, agents or lower-tier subcontractors, Subcontractor assumes the liability therefore and shall indemnify and hold harmless therefrom the Owner[s] and [Plaintiff] and their agents, servants, employees and sureties. With respect to any action involving Subcontractor's acts or omissions, "(i) Subcontractor shall at its own expense defend [Plaintiff] and all other indemnified parties, and (ii) Subcontractor shall pay all costs and expenses, including attorneys' fees, of, and satisfy all judgments entered against Clark and all other indemnified parties." (Mem. in Support of Plaintiff's Mot. for Partial Summ. J. Against Defendants Eagle Amalgamated Services, Inc. and Capitol Indemnity Corporation, Att. F at ¶ 6(c)).

Neither party submits that any other provision of the Subcontract is relevant to the motion currently before the Court.

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Eagle does not dispute that the demolition work, including the implosion of the Concourse Hall, was within the scope of Eagle's responsibility under the Subcontract. Furthermore, Eagle does not deny responsibility for the implosion or the unintended damages the implosion inflicted on the Convention Center. Eagle denies only that the October 12, 1999 letter from Plaintiff represents a notice or demand

letter. For purposes of the instant motion, however, this factual dispute is irrelevant. Eagle does not claim that Plaintiff violated any notice provision in the Subcontract; furthermore, there is no evidence before the Court at this time which might suggest that such a provision exists.

■ Under these circumstances, Eagle's actions fit squarely within the terms of Paragraph 6(c), which stipulates that Eagle will assume liability for any property damaged by its employees or agents. Paragraph 6(c) specifically provides that Eagle "shall pay all costs and expenses, including attorneys' fees, of, and satisfy all judgments entered against [Plaintiff] and all other indemnified parties." (Mem. in Support of Plaintiff's Mot. for Partial Summ. J. Against Defendants Eagle Amalgamated Services, Inc. and Capitol Indemnity Corporation, Att. F at ¶ 6(c)).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Plaintiff has established that there is no dispute over any material facts and that enforcement of Paragraph 6(c) would entitle him to judgment as a matter of law on the issue of Eagle's liability for the unintended damages caused by the implosion. As Plaintiff has made a properly supported motion for partial summary judgment, Eagle "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial," i.e., it must submit evidence which would permit a reasonable jury to find for Eagle. See Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Notwithstanding the requirements of Rule 56, Eagle rests upon the denials contained in its pleadings. Eagle maintains only that Plaintiff's motion for partial summary judgment is premature because: (1) Plaintiff has not itemized the relevant damages; (2) discovery has not yet been completed; and (3) other third-party defendants may be added. These assertions do not impact upon the issue of Eagle's liability under Paragraph 6(c) of the Subcontract. Accordingly, Eagle fails to create the genuine issue of material fact necessary to overcome Plaintiff's motion for partial summary judgment on the liability issue in Plaintiff's contractual indemnity claim.

Having found that Plaintiff is entitled to judgment as a matter of law on the issue of Eagle's liability, the Court finds that: (1) Eagle has breached its duty under Paragraph 6(c) of the Subcontract to defend, indemnify, and hold harmless Plaintiff from all claims arising from or by reason of the October 10, 1999 implosion accident; (2) Eagle must reimburse Plaintiff for all costs and expenses related to the October 10, 1999 accident; and (3) Eagle must satisfy all October 10, 1999 implosion accident-related judgments entered against Plaintiff. Accordingly, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment against Eagle.

### B. Capitol's Liability for Breach of the Performance Bond

Under the terms of the Performance Bond, Capitol "shall indemnify and save harmless [Plaintiff] of and from *any and all loss, damage, and expense,* including costs and attorney's fees, which [Plaintiff] may sustain by reason of failure of [Eagle's] failure" to perform the work agreed to in the Subcontract. See (Mem. in Support of Plaintiff's Mot. for Partial Summ. J. Against Defendants Eagle Amalgamat-

ed Services, Inc. and Capitol Indemnity Corporation, (Att. G) (emphasis added). The Performance Bond also explicitly references and incorporates the Subcontract and all of Eagle's obligations thereunder. *See id.* at (Att. G). Furthermore, as referenced above, Paragraph 6(c) of the Subcontract specifically provides that Eagle "shall pay *all costs and expenses,* including attorneys' fees, of, and *satisfy all judgments* entered against [Plaintiff] and all other indemnified parties." *Id.* at Att. F, ¶ 6(c)) (emphasis added). Thus, both the Performance Bond and the Subcontract clearly oblige Capitol to indemnify and hold Plaintiff harmless for *any* loss, damage, or expense that Plaintiff incurs as a result of Eagle's nonperformance of the Subcontract.

Capitol disputes only a single material fact concerning the scope of its obligations under the Performance Bond and the Subcontract. Relying solely on the pleadings, Capitol asserts that its liability under these documents is limited to $999,877.00, a figure it maintains was set by the terms of the Performance Bond.

The Performance Bond provides that Eagle and Capitol, as surety, "are held and firmly bound unto" Plaintiff "in the sum of... $999,877.00, for the payment of which sum well and truly to be made, [Eagle and Capitol] bind themselves..." *Id.* at Att. G. As noted above, the Performance Bond also holds Capitol liable for "any and all loss, damage, and expense" caused by Eagle. *Id.* Similarly, the Subcontract holds Capitol liable for "all costs and expenses." *Id.* at Att. F.

█ Based on this contractual language, the Court finds that Capitol is liable to the same extent as Eagle and must defend and indemnify Plaintiff accordingly. Under the terms of the Performance Bond, Capitol agreed to bind itself as a surety in exchange for Eagle's receipt of $999,877.00, the total payment Plaintiff agreed to make in exchange for the work Eagle completed under the terms of the Subcontract. There is absolutely no evidence supporting Capitol's suggestion that the $999,877.00 figure was designed to serve as a cap on damages.

Plaintiff has made a properly supported motion for partial summary judgment as to the issue of Capitol's liability under the Performance Bond. Capitol fails to set forth specific facts showing that there is a genuine issue for trial. As a result, Plaintiff is entitled to judgment as a matter of law on the issue of Capitol's liability under the Performance Bond.

## IV. Conclusion

For the reasons set forth herein, the Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment Against Defendants Eagle Amalgamated Services, Inc. and Capitol Indemnity Corporation.